**FILED**
**NOVEMBER 13, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| KANSAS CITY, MISSOURI ) | |
| ) | **07 C 6431** |
| In the Matter of the Revocation of ) | |
| the Naturalization of ) | |
| ) | |
| JOSE SUAREZ ) | AFFIDAVIT OF GOOD CAUSE |
| A35 499 040 ) | |

**JUDGE GOTTSCHALL**
**MAGISTRATE JUDGE ASHMAN**

**J. N.**

I, Kenneth R. Lovesee, declare under penalty of perjury as follows:

I.   I am a Special Agent of the Immigration and Customs Enforcement, United States Department of Homeland Security ("DHS"). In this capacity, I have access to the official records maintained by the DHS, including the immigration file of Jose Suarez, A35 499 040.

II.   I have reviewed the records relating to Mr. Suarez's case. Based on this review, I state, on information and belief, that the information set forth in this Affidavit of Good Cause is true and correct.

III.   On December 17, 1996, Jose Suarez filed an application for naturalization, INS Form N-400, with the Chicago, Illinois, District Office of the Immigration and Naturalization Service ("INS").[1] He was interviewed, under oath, by an INS officer on August 11, 1997. On the basis of his written application and naturalization interview, his application was approved on April 4, 1998. Mr. Suarez took the oath of allegiance on May 14, 1998, and was admitted as a citizen of the United States on that date. He was issued a Certificate of Naturalization, number 22 333 235.

IV.   Mr. Suarez illegally procured his naturalization because he could not have established that he was a person of good moral character during the five-year period immediately preceding the

---

[1] As of March 1, 2003, the INS ceased to exist and its functions were transferred to various agencies within DHS. See Homeland Security Act of 2002, §§ 441, 451, 471, Pub. L. No. 107-296, 116 Stat. 2135 (2002) (codified at 6 U.S.C. §§ 251, 271, 291). This transfer does not affect the issues in this case. Because Mr. Suarez's naturalization case was adjudicated before the transfer, this Affidavit of Good Cause will reference the INS as necessary.

date he naturalized. As an applicant for naturalization pursuant to section 316(a) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1427(a), Mr. Suarez was required to prove that he was a person of good moral character from December 17, 1991, five years before he filed his application for naturalization, until the time he became a naturalized citizen on May 14, 1998 ("statutory period").

A. Mr. Suarez could not have established that he was a person of good moral character during the statutory period because he committed unlawful acts that adversely reflected upon his moral character.

1. An applicant for naturalization is precluded from establishing good moral character if, during the statutory period, he commits unlawful acts that adversely reflect upon his moral character, unless there are extenuating circumstances.

2. From June 1996 through October 22, 1996, during the statutory period, Mr. Suarez committed the criminal acts of Conspiracy to Distribute Marijuana and Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846.

3. On July 13, 1999, after he naturalized, Mr. Suarez was convicted of Conspiracy to Distribute Marijuana and Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846. He was sentenced to imprisonment for 87 months, followed by four years of supervised release for his conviction for Conspiracy to Distribute Marijuana, and three years of supervised release for his conviction for Possession with Intent to Distribute Marijuana, the supervised release terms to run concurrently.

    4.    Conspiracy to Distribute Marijuana and Possession with Intent to Distribute Marijuana are unlawful acts that adversely reflect upon an individual's moral character.

    5.    As evidenced by his post-naturalization convictions, there were no extenuating circumstances that could have mitigated the effect of Mr. Suarez's actions on his ability to establish good moral character.

    6.    Because Mr. Suarez committed unlawful acts adversely affecting his moral character within the period of time in which he was required to establish good moral character, he was precluded from establishing good moral character, and was therefore ineligible for naturalization. Consequently, he illegally procured his naturalization.

B.    Mr. Suarez could not have established that he was a person of good moral character because, during his naturalization interview conducted under oath on August 11, 1997, he provided false testimony for the purpose of obtaining his naturalization.

    1.    An individual who, during the statutory period, provides false testimony with the intent of obtaining any benefit under the INA, including naturalization, is precluded from establishing good moral character.

    2.    On August 11, 1997, Mr. Suarez appeared before Zulfiqar Abid, an officer of the INS, for an interview regarding his application for naturalization.

    3.    At the beginning of the naturalization interview, Mr. Suarez took an oath or affirmed that he would answer all questions truthfully.

    4.    During the course of his naturalization interview, and in order to adjudge his eligibility for naturalization, INS Officer Abid asked Mr. Suarez whether he had ever knowingly committed any crime for which he had not been arrested.

5. In response to this question, Mr. Suarez falsely testified under oath that he had never knowingly committed a crime for which he had not been arrested.

6. This testimony was false. As indicated above, Mr. Suarez committed the criminal acts of Conspiracy to Distribute Marijuana and Possession with Intent to Distribute Marijuana from June 1996 through October 22, 1996. Mr. Suarez was not arrested for this offense until after his naturalization. On July 13, 1999, after being found guilty by jury, Mr. Suarez was convicted of Conspiracy to Distribute Marijuana and Possession with Intent to Distribute Marijuana. He was sentenced to imprisonment for 87 months, followed by supervised release.

7. Mr. Suarez's false testimony concealed that he had committed crimes that negatively affected his ability to establish good moral character.

8. Because Mr. Suarez provided false testimony during the statutory period for the purpose of obtaining naturalization, he could not have established that he was a person of good moral character.

V. Mr. Suarez procured his naturalization by willful misrepresentation and concealment of material facts.

A. Mr. Suarez misrepresented and concealed his criminal history during his naturalization proceeding.

1. On his naturalization application, Mr. Suarez represented that he had never knowingly committed a crime for which he had not been arrested. Mr. Suarez signed his application on November 3, 1996, thereby certifying, under penalty of perjury, that his application for naturalization was true and correct.

2. During his naturalization interview on August 11, 1997, Mr. Suarez testified, under oath, that he had never knowingly committed a crime for which he had

    not been arrested. At the end of his naturalization interview, Mr. Suarez again swore that the contents of his naturalization application were true.

  3. These representations were false. In fact, from June 1996 through October 22, 1996, Mr. Suarez committed the offenses of Conspiracy to Distribute Marijuana, in violation of 21 U.S.C. § 846, and Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 841(a)(1), for which he was subsequently convicted on July 13, 1999.

 B. Mr. Suarez's criminal acts were material to determining his eligibility for naturalization because they would have had the natural tendency to influence the INS decision whether to approve his application. In fact, Mr. Suarez's criminal acts would have precluded him from establishing the requisite good moral character for naturalization.

 C. Mr. Suarez procured his naturalization by misrepresenting and concealing his criminal acts.

VI. Based on the facts outlined in the foregoing paragraphs, good cause exists to institute proceedings pursuant to section 340(a) of the INA, 8 U.S.C. § 1451(a), to revoke Mr. Suarez's citizenship, and to cancel his certificate of naturalization.

VII. Mr. Suarez's last known place of residence is 2236 S. Levitt Street, Chicago, Illinois 60608.

DECLARATION IN LIEU OF JURAT
(28 U.S.C. § 1746)

I declare under penalty of perjury that the foregoing is true and correct. Executed on _October 5_, 2006.

Kenneth R. Lovesee
Special Agent